UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS GLADU, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 1:20-cv-00449-JDL |
| | ) | |
| MAINE DEPARTMENT OF | ) | |
| OF CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON MOTIONS TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO AMEND COMPLAINT/ ORDER ON OTHER MOTIONS

Plaintiffs Nicholas Gladu and Anthony Hardy, inmates at the Maine State Prison, allege various claims arising out of the conditions of their confinement while assigned to the prison's Special Management Unit.

Defendants Maine Department of Corrections (MDOC), Randall Liberty, Matthew Magnusson, Anthony Cantillo, Troy Ross, Heather Richardson, Harold Abbott, and Kyle Ruffner (collectively, the MDOC Defendants) move to dismiss Plaintiffs' state law tort claims, and for summary judgment on all federal claims brought by Plaintiff Hardy. (MDOC Motion, ECF No. 140.)  The MDOC Defendants ask the Court to take judicial notice of certain MDOC policies and other documents.  (Request for Judicial Notice, ECF No. 147.)  Defendants Wellpath LLC, James Fine, M.D.,[1] Robyn Hodges, Psy.D., Jascha

---

[1] Plaintiffs' proposed second amended complaint does not list Dr. Fine as a defendant in the caption, but Plaintiff refers to Dr. Fine as a defendant in some of the allegations. (*See* SAC ¶¶ 87, 108, 116.) I, therefore, include Dr. Fine among the Wellpath Defendants.

Propp, Psy.D., and Amanda Seirup, Psy.D. (collectively, the Wellpath Defendants) move to dismiss Plaintiffs' state law claims.  (Wellpath Motion, ECF No. 146.)

After Defendants filed their dispositive motions, Plaintiffs moved for leave to file a second amended complaint.  (Motion for Leave to Amend, ECF No. 162.)   Plaintiffs also requested that exhibits from the first amended complaint be "attached" to the second amended complaint.  (Motion to Attach Exhibits, ECF No. 163; *see* Exhibit 1, ECF No. 68-1.)

Following a review of the record and after consideration of the parties' arguments, I grant the MDOC Defendants' motion for judicial notice, grant in part Plaintiffs' motion for leave to file a second amended complaint, and grant Plaintiffs' motion regarding the exhibits to the second amended complaint.  I also recommend the Court grant in part the MDOC Defendants' motion for summary judgment, dismiss as moot their motion to dismiss, and dismiss as moot the Wellpath Defendants' motion to dismiss.

## PROCEDURAL BACKGROUND

Plaintiffs[2] filed their original complaint on December 2, 2020.  (Complaint, ECF No. 1.)  Plaintiffs moved to amend their complaint on May 19, 2021 (Motion to Amend, ECF No. 62),[3] which motion the Court granted on June 30, 2021.  (Order, ECF No. 67; *see*

---

[2] Some of the original plaintiffs are no longer involved in the case.  Plaintiff Robert Carroll withdrew as a party (*see* ECF Nos. 51, 52), and the Court dismissed the claims of Plaintiffs Ryan Lane and Jacob Zernicki for lack of prosecution.  (*See* ECF Nos. 57, 66.)  Plaintiff Zachary Swain moved to sever his case (ECF No. 88), filed an amended complaint on his own behalf (ECF No. 87), and moved voluntarily to dismiss his claims without prejudice. (Motion, ECF No. 100.)  The Court granted Plaintiff Swain's motion to dismiss on December 2, 2021. (Order, ECF No. 105.)

[3] Plaintiffs Gladu, Hardy and former plaintiff Swain first moved to amend their complaint on March 18, 2021, essentially asking the Court to remove Carroll, Lane and Zernicki from the case without their consent.

First Amended Complaint, ECF No. 68.)  After a review of the first amended complaint pursuant to 28 U.S.C. §§ 1915A(a) and 1915(e)(2), I recommended the Court dismiss Plaintiffs' claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act against all defendants except MDOC, dismiss Plaintiffs' claims brought under the Civil Rights Act, dismiss the state law damages claims against Defendant MDOC, dismiss all claims against Defendants Liberty, Thornell, Newby, and Ritter, and permit Plaintiff to proceed on their other claims against the remaining defendants.  (Recommended Decision at 6, ECF No. 75.)  On Plaintiffs' objection to the recommended decision, the Court adopted the recommendation, with one exception, concluding that Plaintiffs had stated a plausible claim against Defendant Liberty, in his official capacity only, for violation of the Eighth Amendment.  (Order on Recommended Decision at 3, ECF No. 104.)

## MDOC DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

The MDOC Defendants ask the Court to take judicial notice of the following MDOC documents in connection with their motion to dismiss and their motion for summary judgment:  (1) Disciplinary Restriction Special Management Housing Policy 15.04, (2) Administrative Control Unit Policy 15.05, and (3) Resident Personal Hygiene, General Guidelines 17.03, as well as individual profiles of Plaintiffs Gladu and Hardy from MDOC's website.  (Motion, ECF No. 147.)  Pursuant to Rule 201(b) of the Federal Rules of Evidence, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can

---

(Motion to Amend, ECF No. 40).  After review of the proposed amended complaint, the Court denied Plaintiffs' motion.  (Recommended Decision at 3-4, 6, ECF No. 57; Order, ECF No. 58.)

be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In addition, "[t]he court . . . *must* take judicial notice [of adjudicative facts] if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added). The documents offered by the MDOC Defendants satisfy the requirements of Rule 201(b). The Court, therefore, takes judicial notice of the documents.

### MOTION TO AMEND COMPLAINT AND DEFENDANTS' MOTIONS TO DISMISS

Through their motion to amend, Plaintiffs seek to (1) amend some of their factual allegations, (2) add a claim under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182(a), against Defendant Wellpath, (3) add a claim for a civil conspiracy pursuant to 42 U.S.C. § 1985 against Defendants Liberty, Thornell, Magnusson, Ross, and Cantillo, (4) add a habeas corpus claim, and (5) remove their state law claims.

A court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is properly denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962). After consideration of the parties' arguments, as discussed below, I grant in part Plaintiffs' motion to amend and Plaintiffs' request to attach the exhibits from the operative complaint to the second amended complaint. Because Plaintiffs' second amended complaint removes the state law claims Plaintiffs asserted in the first amended complaint, which claims are the subject of Defendants' motions to dismiss, Defendants' motions to dismiss are moot.

### A.   Timeliness of Motion to Amend

The MDOC Defendants ask the Court to deny the motion because Plaintiffs filed the motion more than a year after their original complaint.  (Response to Motion for Leave to Amend at 2-3, ECF No. 177.)  Plaintiffs first expressed an intention to file a second amended complaint before any of the defendants filed a response to either the original complaint or the first amended complaint. (*See* Motion to Extend Time to File Motion for Leave to Amend, ECF No. 139.)  Furthermore, because the Court was required to conduct a preliminary review of Plaintiffs' claims in accordance with 28 U.S.C. §§ 1915 and 1915A, and because the Court had to address numerous motions and issues related to all the original plaintiffs, the Court has not yet issued a scheduling order.  Discovery, therefore, has not commenced.  Under the circumstances, the Court discerns little, if any, prejudice to the MDOC Defendants based on the timing of the motion.[4]

### B.   Futility of the Amendment

The MDOC Defendants and the Wellpath Defendants also argue that many of Plaintiffs' proposed amendments would be futile.  A "futile" amendment is one that "would fail to state a claim upon which relief could be granted."  *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *see also Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001).   In other words, "if the proposed

---

[4] Plaintiffs' motion to extend time to file a motion to amend is unnecessary.  Because the Court has not issued a scheduling order and thus has not established a deadline for the amendment of pleadings, there is no deadline to extend.  The timeliness of a motion to amend is a factor a court considers when assessing whether to allow a requested amendment.  The motion to extend time (ECF No. 139), therefore, is dismissed.

amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Boston & Me. Corp. v. Hampton,* 987 F.2d 855, 868 (1st Cir. 1993).  When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

Plaintiffs assert they have been assigned to the Special Management Unit A-2 in the MSP, referred to as the "segregation unit" or "SMU." (Proposed Second Amended Complaint (SAC) ¶ 68.)  Plaintiffs allege they are permitted only one hour of outside recreation per day and are often locked in their cells for twenty-four hours.  (*Id.* ¶¶ 68, 74(a), 183(f).)  Plaintiffs maintain that prisoners in the unit are permitted one ten-minute weekly phone call, and they have no access to certain media (e.g., radio, television), or educational services or programming.  (*Id.* ¶¶ 69, 74, 107(g), 123-24, 183(g).)  At times, prisoners have no access to library reading materials; Plaintiffs have not received the mail they ordinarily receive while in the general prison population, including magazines.  (*Id.* ¶¶ 130–35.)

Plaintiffs assert that they have several medical conditions, including conditions that affect their mental health. (*Id.* ¶¶ 36-41, 55, 64.)  According to Plaintiffs, the National Commission on Correctional Health Care Standards for Mental Health Services in Correctional Facilities states that seriously mentally ill prisoners should not be confined under conditions of extreme isolation for more than thirty days.  (*Id.* ¶ 46.)  MDOC policy provides for weekly and monthly reviews of prisoners in solitary confinement, but

Plaintiffs have been denied the reviews. (*Id.* ¶¶ 70-72.)  Plaintiffs allege Plaintiff Hardy has been in solitary confinement for most of his sentence and that Plaintiff Gladu has been placed in the SMU for many months at a time.  (*Id.* ¶¶ 65, 67, 75, 78, 81.)  Plaintiffs assert that because of their mental health conditions, they act erratically, resulting in disciplinary infractions, fines, and extended time in the segregation unit.  (*Id.* ¶¶ 59-60, 62, 75-81.) Plaintiffs allege that they have been denied adequate mental health resources and treatment and their mental health has suffered due to their protracted assignment to solitary confinement.  (*Id.* ¶¶ 58, 64, 67, 111-12, 115, 183(i).)

Plaintiffs contend Dr. Fine conducted a comprehensive psychological evaluation of Plaintiff Gladu in March, 2021.  (*Id.* ¶ 87.)  Plaintiffs claim Dr. Fine "undiagnosed" Plaintiff Gladu with any mental health disorder, failing to identity his alleged autism spectrum disorder or any other "serious" mental disorder Plaintiff Gladu alleges other health care providers previously diagnosed.  (*Id.* ¶¶ 87-89.)  Plaintiffs maintain Dr. Fine did not diagnose Plaintiff Gladu with a mental health disorder to gain an advantage in this litigation and acted in accordance with a conspiracy involving Defendants Liberty, Thornell, Magnusson, Ross, Cantillo, and others.  (*Id.* ¶¶ 88, 90.)

As they did in the first amended complaint, Plaintiffs also claim the sanitation in SMU A-2 is lacking.  (*Id.* ¶¶ 183(a)-(b).)  Plaintiffs allege inadequate cleaning procedures, failing plumbing, and recurrent shortages of hygiene items, such as soap, toothpaste, deodorant, and toothbrushes.  (*Id.* ¶¶ 107(a)-(f); 183(a)-(b), (h).)  Plaintiffs also assert they do not always have access to eating utensils, that meals are prepared and served at unsafe temperatures, and that the heat in the unit is insufficient.  (*Id.* ¶ 183(c)-(e).)

In addition, Plaintiffs assert that Defendants Wellpath and Ritter do not staff the MSP with enough qualified mental health providers.  (*Id.* ¶¶ 109-14.)  Plaintiffs contend the staff shortage means mental health providers may only spend a few minutes with a prisoner, often "cell-side" at the resident's cell door, which affords the prisoner little privacy.  (*Id.* ¶110.)

### 1.    ADA Title III Claim Against Defendant Wellpath

Plaintiffs allege Defendant Wellpath discriminated against them in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq., by failing to provide mental health care and treatment and denying Plaintiffs access to programs and services.  (SAC ¶¶ 165-76.)[5]  "Title III … addresses discrimination in public accommodations and services operated by private entities."  *Buchanan v. Maine*, 469 F.3d 158, 170 (1st Cir. 2006).  The law provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation.

42 U.S.C. § 12182(a).  To prevail on a Title III discrimination claim, a plaintiff must show that (1) he or she is disabled within the meaning of the ADA; (2) the defendant is a private

---

[5] Although Count IV of Plaintiffs' SAC references Title II of the ADA, the substance of the claim addresses only allegations under Title III.  (SAC ¶¶ 165-76.)  The Court previously dismissed Plaintiffs' Title II claim against Defendant Wellpath.  *See Swain v. Maine Dep't of Corr.*, 1:20-cv-00449-JDL (ECF No. 75), 2021 WL 3929568, at *2 (D. Me. Sept. 2, 2021) (*aff'd in relevant part*, (ECF No. 104), Dec. 2, 2021) ("The weight of authority … holds that prisoners can only pursue their ADA and Rehabilitation Act claims against the public entities contracting with private organizations and not against the private organizations, like Defendant Wellpath, because private contractors are neither public entities nor programs receiving federal financial assistance.") (citing *Gross v. Landry*, 2:17-cv-00297-LEW, 2019 WL 1270922, at *9 (D. Me. Mar. 19, 2019) (*aff'd*, Apr. 19, 2019) (collecting cases)).

entity that owns, leases, or operates a place of public accommodation; and (3) he or she was denied a public accommodation by the defendant because of a disability.  *See Cutting v. Down East Orthopedic Assocs, P.A.*, 278 F. Supp. 3d 485, 496 (D. Me. 2017) (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999)).

Defendant Wellpath argues that it is not a place of public accommodation.  Although at least one court has held that prison medical facilities are places of public accommodation, *see, e.g., Hernandez v. Cty of Monterey*, 70 F. Supp. 3d 963, 978 (N.D. Cal. 2014) (finding plaintiffs sufficiently alleged jail healthcare facility "'operates' a professional office in the actual physical 'place' of the jail to provide the 'public accommodation' of all required medical care"), the "weight of authority suggests that prisons and prison medical facilities are not 'public accommodations' within the meaning of the ADA."  *Gross v. Landry*, 2:19-cv-00297-LEW, 2019 WL 1270922, at *10 (D. Me. Mar. 19, 2019) (*aff'd*, April 19, 2019) (collecting cases); *see also Collazo v. Corr. Corp. of Am.*, No. 4:11cv1424, 2011 WL 6012425,  at *4 (N.D. Ohio, Nov. 30, 2011) (finding private prison not a place of public accommodation under Title III).

This Court previously explained:

> Under Title III, a plaintiff must show that "the defendant's establishment is subject to the mandates of Title III as a place of public accommodation." *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003).  "The phrase 'public accommodation' is defined in terms of 12 extensive categories" of examples.  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676 (2001).  Prisons and prison medical facilities are not among the statutory examples.  Courts have contrasted "public accommodations" that are "open to the general public" with private clubs utilizing a "limited guest policy."

> *See e.g., Jankey v. Twentieth Century Fox Film Corp*., 14 F. Supp. 2d 1174,
> 1178 (C.D. Cal. 1998).

2019 WL 1270922, at *9.  The reasoning of this Court and others is sound.  Prison medical facilities and services are not, by definition, open to the public and, as such, are not subject to suit under Title III.  Plaintiffs' proposed amendment to assert an ADA Title III claim against Defendant Wellpath, therefore, would be futile.

### 2.  Civil Conspiracy Claim Against Certain Defendants

Plaintiffs allege several defendants conspired against Plaintiff Gladu in violation of 42 U.S.C. § 1985.  (SAC ¶¶ 86-90.)  Plaintiffs do not specify which subsection of section 1985 Defendants allegedly violated.

Under section 1985(3), a general civil conspiracy is defined as "two or more persons … conspir[ing] … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws …."  42 U.S.C. § 1985(3).  To state a claim for conspiracy, a plaintiff must allege (1) the existence of a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws;[6] (3) that the defendant(s) committed an overt act in furtherance of the conspiracy; and (3) that caused injury to either the plaintiff's person or property "'or a deprivation of a constitutionally protected right.'"  *Parker v. Landry*, 935 F.3d 9, 17-18 (1st Cir. 2019) (quoting *Pérez-Sánchez v. Pub. Bldg. Auth*., 531 F.3d 104, 107 (1st Cir. 2008); *see also Alston v. Spiegel*, 988 F.3d 564. 577 (1st Cir. 2021).

---

[6] A "general section 1985[(3)] conspiracy claim … is actionable only under circumstances involving an equal protection violation, *i.e*., circumstances involving discriminatory class-based animus …."  *Gladu v. Ross*, No. 2:15-CV-274-DBH, 2017 WL 1403157, at *1 (April 19, 2017).

To plead the existence of a conspiracy under the statute,

> "a plaintiff must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of [his] civil rights" or "plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." [*Alston*, 988 F.3d at] at 577-78 …. Put simply, "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." *Id.* at 578 (citing *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019)).

*Brown v. Cumberland Cty*, 557 F. Supp. 3d 169, 188 (D. Me. 2021). "Although a court can infer that an agreement was made when direct evidence is lacking, such an inference must still be based on sufficient and plausible factual allegations." *Id.*

Here, Plaintiffs allege "[u]pon information and belief, Defendants Liberty, Thornell, Magnusson, Ross, Cantillo, and others conspired with Dr. Fine to 'undiagnose'" Plaintiff Gladu.[7] While it "may be in the realm of possibility" that Defendants conspired to affect the results of Dr. Fine's psychiatric evaluation of Plaintiff Gladu, "nothing in the SAC's factual allegations permit a reasonable inference to that effect." *Alston*, 988 F.3d at 578. Where, as in this case, a plaintiff "plead[s] no facts to support the existence of an agreement" among the defendants to violate the plaintiff's constitutional rights, a plaintiff "fail[s] to cross the plausibility threshold." *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 307 (D. Mass. 2017); *see also Brown*, 557 F. Supp. 3d at 188-89; *Alston*, 988 F.3d at 578 ("A pleader is entitled to have reasonable inference drawn in his favor, but he is not entitled to the benefit of speculation unanchored to sufficiently supportive facts.").

---

[7] The Wellpath Defendants note that Dr. Fine's alleged evaluation of Plaintiff Gladu, beginning in March 2021, took place months before the Court ordered service on them. (*See* Objection to Motion for Leave to File Amended Complaint at 5, ECF No. 175; Order for Service, ECF No. 110.)

Section 1985(2) defines a conspiracy of "two or more persons … [who] conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully …."  42 U.S.C. § 1985(2).  "The first part of §1985(2) … is addressed to conspiracies to interfere with parties, jurors or witnesses in proceedings in federal courts." *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir. 1975).  "[A]s the plain language of the statute and its legislative history indicate, section 1985(2) 'was intended to protect against direct violations of a party or witness's right to attend or testify in federal court.' " *Aroyo-Torres v. Ponce Fed. Bank*, F.B.S., 918 F.2d 276, 279 (1st Cir. 1990) (quoting *Kimble v. D.J. McDuffy, Inc*., 648 F.2d 340, 348 (5th Cir. 1981).[8]  The elements of a claim under 1985(2) are "(1) a conspiracy, (2) intent to deter testimony by force or intimidation, and (3) injury to the plaintiff." *Douglas v. Garden City Cmty. Coll*., 543 F. Supp. 3d 1043, 1063 (D. Kan. 2021).  Plaintiffs have not alleged any facts that would support such a claim.

### 3.  Plaintiffs' Habeas Corpus Claim

Plaintiffs assert that their challenge to their conditions of confinement at MSP is premised, in part, on habeas corpus grounds and thus they propose to amend their complaint to add a habeas claim.  (*See* SAC ¶ 7.)  The MDOC Defendants contend that habeas relief is not available because a claim "challenging prison conditions is not a

---

[8] "[A]n equal protection violation is *not* required for a conspiracy charged under 42 U.S.C. § 1985(2) …." *Gladu*, 2017 WL 1403157, at *1.  (emphasis in original) (citing *Kush v. Rutledge*, 460 U.S. 719, 726 (1983) ("the statutory language that provides the textual basis for 'class-based, invidiously discriminatory animus' requirement simply does not appear in th[is] portion of the statute …."))).

petition for habeas corpus" and "because [Plaintiffs] are not asking the Court to invalidate their criminal sentences." (Response to Motion to Amend at 4.)

Prisoners ordinarily challenge the conditions of their confinement in civil rights actions pursuant to 42 U.S.C. § 1983, but under certain circumstances, habeas petitions under 28 U.S.C. § 2241 or § 2254 could also provide an avenue for relief. *See Gomes v. US Dep't of Homeland Sec., Acting Sec'y*, No. 20-CV-453-LM, 2020 WL 3258627, at *2-3 (D.N.H. June 16, 2020) (discussing split of authority and summarizing First Circuit cases).[9]  Whether a prisoner who challenges the conditions of confinement can obtain habeas relief in a particular case depends on the nature of the claim.

If a prisoner seeks a "quantum change in the level of custody," habeas relief is potentially available. *Id*. at *3 (citing *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 873 (1st Cir. 2010)).  In *Molina*, the First Circuit noted with approval the Seventh Circuit's reasoning on the issue:

> If the prisoner is seeking what can be fairly described as a quantum change in the level of custody – whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation … then habeas corpus is his remedy.  But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under the civil rights law, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.

---

[9] The circuit courts' split over whether a prisoner seeking relief short of release from custody, such as an alteration in the level of custody, may seek such relief through habeas corpus stems from varying interpretations of Supreme Court dicta in *Prieser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.").  This Court has recognized that habeas relief is potentially available where a prisoner does not seek to invalidate a conviction or shorten a sentence. *See Denbow v. Maine Dep't of Corr.,* No. 1:20-cv-00175-JAW, 2020 WL 4004795, at *3 (D. Me. July 15, 2020).

*Molina*, 607 F.3d at 873 (quoting *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)).

Interestingly, the First Circuit used ellipses in lieu of the following language: "or the run

of the prison in contrast to the approximation to solitary confinement that is disciplinary

segregation." *See Graham*, 922 F.2d at 381.  Because the issue in *Molina* did not involve

segregation and because the First Circuit has not addressed the issue further, I do not

interpret the First Circuit's use of ellipses as a rejection of the concept that habeas relief

could be available when a prisoner seeks release from certain types of disciplinary

segregation.

Here, although Plaintiffs do not ask the Court to order their release from custody,

because they arguably ask the Court to order the MDOC Defendants to transfer Plaintiffs

from the SMU, which Plaintiffs describe as solitary confinement or restrictive housing,  to

another unit,[10] given the First Circuit's discussion in *Molina* and given that the MDOC

Defendants did not acknowledge and thus did not address the circumstances under which

habeas relief might be available where a prisoner "is not seeking to invalidate a criminal

sentence," at this stage of the proceedings, I cannot conclude that the amendment to add a

habeas claim would be futile.[11]

---

[10] Plaintiffs' filings are somewhat ambiguous as to Plaintiffs' current unit assignment.  In the context of the futility assessment, I construe Plaintiffs' proposed amended complaint in the light most favorable to Plaintiffs.

[11] Citing 28 U.S.C. § 2254, the MDOC Defendants contend that "there is a strict exhaustion requirement through the criminal courts." (Response at 4.)  Exhaustion is an affirmative defense to be raised by a defendant/respondent to a habeas action.  *See* Rule 5(b) of the Rules Governing Section 2254 Cases; *Cook v. Spaulding*, 433 F. Supp. 2d 54, 56-57 (D. Mass. 2020).  The MDOC Defendants do not describe the applicable exhaustion requirement for a habeas action in which a prisoner does not seek to invalidate a

14

### 4.    Claims Against Certain Wellpath Defendants

In their proposed second amended complaint, Plaintiffs purport to assert claims against several individual Wellpath Defendants—Defendants Propp, Hodges, Newby, Fine, and Ritter—based on deliberate indifference to Plaintiffs' mental health needs.  The Eighth Amendment prohibition on cruel and usual punishments governs prisoners' treatment after conviction.  *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243 (1983).  "Prison officials have a duty to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Giroux v. Somerset Cnty.*, 178 F.3d 28, 31 (1st Cir. 1999) (citations and quotation marks omitted).  To establish constitutional liability, a plaintiff must satisfy an objective standard by showing he or she was "incarcerated under conditions posing a substantial risk of serious harm," and a plaintiff must satisfy a subjective standard by showing that the defendant "acted, or failed to act, with 'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834).

The objective standard evaluates the seriousness of the risk of harm.  There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would recognize a need for medical intervention.  *Leavitt*,

---

criminal conviction or shorten the sentence, nor do they demonstrate how Plaintiffs might have failed to satisfy the requirement.

645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)).  The subjective standard concerns the culpability of the defendant. Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney v. Corr. Med. Servs.*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)).  The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).

To state a plausible claim for relief against each individual defendant, Plaintiffs' allegations, if true, must support a finding that the individual, through his or her individual actions, violated Plaintiffs' rights.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Each defendant "is entitled to an individualized assessment as to whether [Plaintiffs] ha[ve] asserted an actionable claim against that defendant." *Schoff v. Fitzpatrick*, 2:16-cv-00609-NT, 2018 WL 1185499, at *7 (D. Me. Mar. 7, 2018).

The Court previously dismissed the claims asserted against Defendants Ritter and Newby in the first amended complaint because Plaintiffs did not "describe any relevant conduct [of these defendants] beyond formulaic and conclusory allegations that they knew or should have known of the conditions in the unit and the conduct and alleged failures of other defendants." (Recommended Decision at 6; Order on the Recommended Decision at 3.)  Plaintiffs' proposed amendments do not cure the noted deficiencies.

The proposed amendment to reiterate the dismissed claims, therefore, would be futile.

16

## MDOC Defendants' Motion for Summary Judgment

Plaintiffs allege the MDOC Defendants acted with deliberate indifference to their mental health medical needs.  The MDOC Defendants assert that Plaintiff Hardy has not exhausted the available administrative remedies and, therefore, they are entitled to summary judgment on Plaintiff's federal claims.[12]

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'"  *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor.  *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015).  If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the plaintiff's claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim.  *Id.*  ("The district court's role is

---

[12] Because the MDOC Defendants filed the motion for summary judgment before Plaintiffs filed their motion to amend and before the Court acted on the motion to amend, the Court considers the motion for summary judgment to address the federal claims asserted in the first amended complaint and included in the second amended complaint.

limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## B.    Summary Judgment Record

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record.  Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b)-(d) require the specific citation to record evidence.  In addition, Local Rule 56 establishes how parties must present their factual statements and the evidence on which the statements depend.  A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules. *Ruiz Rivera v. Riley*, 209 F.3d 24, 27-28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement.  D. Me. Loc. R. 56(b).  A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence.  D. Me. Loc. R. 56(c).  If an additional statement is introduced by the non-moving party, the moving

party must file a reply statement in which it admits, denies, or qualifies the non-moving party's additional statements by reference to each numbered paragraph, with citations to supporting evidence.  D. Me. Loc. R. 56(d).

"Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  D. Me. Loc. R. 56(f).  Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."  *Id.*  Finally, "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."  *Id.*

Nevertheless, the factual assertions contained in the verified pleadings filed by a pro se litigant generally will be considered in the review of a summary judgment motion.  That is, where a pro se litigant has failed to comply strictly with the summary judgment rules, this Court has considered the sworn assertions of record.  *See Clarke v. Blais*, 473 F. Supp. 2d 124, 128-30 (D. Me. 2007) ("The First Circuit has not addressed this notice debate directly, but has said, in the summary judgment context, that unrepresented plaintiffs' opposing affidavits and opposition papers are to be read 'liberally.'") (citing *Posadas de Puerto Rico, Inc., v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988) and *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980)); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182-83 (D. Me. 2007).  Plaintiffs' proposed second amended complaint is verified and thus Plaintiffs' assertions in the proposed second amended complaint are properly considered in the assessment of the summary judgment motion.

In his opposition, Plaintiff Hardy "dispute[s]/den[ies] all material facts stated by Defendants in their motion for summary judgment." (Opposition ¶ 5.) Because Plaintiff Hardy did not properly support his general denial, the Court considers the MDOC Defendants' statements of material facts to be undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2). I also granted the MDOC Defendants' request to take judicial notice of the MDOC's policies and the facts regarding MDOC grievance procedures are self-evident from a review of the text of the policies.

## C.   Factual Background

### 1.   Plaintiff Hardy's Grievance History

Maine law requires Defendant MDOC to provide prisoners an administrative grievance procedure. 34-A M.R.S. § 1402(5). The grievance procedure allows a prison resident to grieve any policy, procedure, practice, action, decision, or event that directly affects the resident, that the resident believes is in violation or his or her rights, or that the resident believes is in violation of MDOC policies and procedures. (DSMF ¶ 3.)

The procedures in effect at the relevant time require a prisoner to first attempt informal resolution of the grievance. (*Id.* ¶¶ 4, 6.) If informal resolution does not resolve the issue, the prisoner must then pursue the grievance through three formal levels of administrative review.[13] (*Id.* ¶ 4.)

---

[13] First, a Grievance Review Officer reviews the grievance; then a Chief Administrative Officer (or a designee) reviews it; and finally, the Commissioner (or a designee) reviews it. (*Id.* ¶ 4.)

The MDOC Defendants assert that Plaintiff Hardy pursued only one relevant grievance through all three formal levels of review.[14]  (*Id*. ¶ 18.)  In the grievance, Plaintiff Hardy alleged that when the MDOC Defendants moved him to SMU cell A-2, he "realized there was blood and feces everywhere, I asked ofc Mason to call the bio-team and he told me he would get me cleaning supplies (he never did)." (Declaration of Austen Fenn, Ex. E, ECF No. 141-5.)

### D.  Discussion

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  "'Prison conditions' under [§ 1997e(a)] include individual instances of medical mis- or non-treatment." *Acosta v. United States Marshals Serv*., 445 F.3d 509, 512 (1st Cir. 2006).

Section 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no

---

[14] Plaintiff Hardy filed a total of twenty-six grievances from 2017 through March 3, 2022. (*Id*. ¶ 9.)  Five of the grievances were exhausted through the third level of review.  (*Id*. ¶ 14.)  Of the five, three concerned missing or misplaced property, and one concerned the use of chemical agents by corrections officers.  (*Id*. ¶¶ 15-17, 19.)  Plaintiff Hardy did not reference the ADA or disability discrimination in any of the five fully exhausted grievances.  (*Id*. ¶¶ 15-20.)

adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "Compliance with prison grievance procedures ... is all that is required ... to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

A defendant may raise the PLRA's exhaustion requirement as an affirmative defense. *Jones*, 549 U.S. at 216; *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain … that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones,* 549 U.S. at 212)). Because failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional issue, initially, the MDOC Defendants bear the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, the MDOC Defendants must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir.) (en banc), *cert. denied sub nom.*, *Scott v. Albino,* 574 U.S. 968 (2014).

The MDOC Defendants argue that Plaintiff Hardy's only fully exhausted grievance relevant to the allegations in this matter involved the allegedly unsanitary condition of his cell when he was placed in the SMU, and the grievance is insufficient to serve as exhaustion for his § 1983 conditions of confinement claim. (Motion at 17.) *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (the exhaustion requirement under the PLRA "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

After a preliminary review of Plaintiffs' complaint, the Court dismissed Plaintiffs' claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act against all defendants except MDOC, dismissed Plaintiffs' claims brought under the Civil Rights Act, 42 U.S.C. § 1983, dismissed the state law damages claims against Defendant MDOC, and dismissed all claims against Defendants Thornell, Newby, and Ritter.  The Court, however, permitted Plaintiffs' remaining claims to proceed.  One of the remaining claims was Plaintiffs' § 1983 Eighth Amendment conditions of confinement claim based on unsanitary conditions. (*See* First Amended Complaint ¶ 183, SAC ¶ 107); *Helling v. McKinney,* 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment.").

"To exhaust administrative remedies through a prison grievance process, the grievant need not lay out the facts, articulate legal theories, or demand particular relief, unless prison rules consistent with the purposes of 42 U.S.C. § 1983 and the PRLA demand otherwise.  Instead, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Beltran v. O'Mara*, 405 F. Supp. 2d 140, 151 (D.N.H. 2005) (internal citations and quotation marks omitted).

Under MDOC policy, a grievance must include "the specific nature of the complaint, including all of the persons and dates involved." (DSMF ¶ 5.)  As the Second Circuit observed, "[u]ncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of

notice pleading" in the grievance process.  *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).  Plaintiff Hardy's grievance can reasonably be construed to allege the conditions existed when he was transferred to the SMU and continued for some time thereafter (the corrections officer "never" provided cleaning supplies) despite alerting a corrections officer (Mason) to the situation.  (*See* Decl. of Austen Fenn ¶ 23, Ex. E (grievance 22-msp-100)).  The record establishes that Plaintiff Hardy exhausted the grievance process on his claim based on the alleged unsanitary conditions identified in the grievance. (*See* SAC ¶ 183.)  The MDOC Defendants, therefore, are not entitled to summary judgment on Plaintiff Hardy's § 1983 Eighth Amendment conditions of confinement claim based on the unsanitary conditions identified in Plaintiff Hardy's grievance.  Given Plaintiff Hardy's failure to exhaust the available administrative remedies regarding any other alleged claims, the MDOC Defendants are entitled to summary judgment as to any other claims asserted pursuant to § 1983.[15]

## CONCLUSION

Based on the foregoing analysis, I grant the MDOC Defendants' request to take judicial notice (ECF No. 147), grant in part Plaintiffs' motion for leave to file a second amended complaint to permit Plaintiffs to proceed on the claims previously permitted and

---

[15] Plaintiff Hardy's contention that he can rely on Plaintiff Gladu's grievances to satisfy the exhaustion requirement is not persuasive.  While the First Circuit has not expressly adopted the doctrine of vicarious exhaustion in class actions, courts applying the doctrine have done so only with respect to classes certified under Federal Rule of Civil Procedure 23(b)(2).[15]  *See Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004); *Hattie v. Hallock*, 8 F. Supp. 2d 685, 689 (N.D. Ohio 1998).  The Court has not certified a class in this case and in the second amended complaint, unlike in the first amended complaint, Plaintiffs do not allege they are members of a class in accordance with Federal Rule of Civil Procedure 23.

the habeas claim alleged in the proposed second amended complaint (ECF No. 162),[16] grant Plaintiffs' request to have the attachments to the first amended complaint  attached to the second amended complaint (ECF No. 163), and dismiss as moot Plaintiffs' motion to extend time (ECF No 139).

I also recommend the Court grant in part the MDOC Defendants' motion for summary judgment as to Plaintiff Anthony Hardy's federal claims, dismiss as moot the motions to dismiss filed by the MDOC Defendants (ECF No. 140) and the Wellpath Defendants (ECF No. 146).

## NOTICE

Any objections to an order issued herein shall be filed, in accordance with Federal Rule of Civil Procedure 72, within 14 days of being served with a copy of the order.

In addition, a party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of June, 2022.

---

[16] On the second amended complaint, Plaintiffs could proceed on their habeas claim against Defendant MDOC and the § 1983 Eighth Amendment claims as allowed after the Court's preliminary review of the first amended complaint.  Plaintiffs cannot amend their first amended complaint to add and ADA III claim, a § 1985 conspiracy claim, a deliberate indifference claim, or a claim against any new defendant such as Dr. Fine.  The result of the second amended complaint, therefore, is to allow Plaintiffs to add a habeas claim to claims as allowed after the Court's preliminary review of the first amended complaint, except for Plaintiffs' state law claims, which Plaintiffs have not included in the proposed second amended complaint.